UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CLAIRE C.,                                          :
        Plaintiff,                              :
                                                   :
        v.                                      :     C.A. No. 25-330-PAS
                                                   :
FRANK BISIGNANO,                                    :
Commissioner of the Social Security                 :
Administration,                                     :
        Defendant.                              :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On April 2, 2023, Plaintiff Claire C., a "younger" individual who graduated from high school but has limited past work history, filed an application for Supplemental Security Income ("SSI") under the Social Security Act. Tr. 15. Plaintiff alleged disability beginning on July 1, 2021, based on a herniated disc; as her application proceeded, other impairments were considered, including depression and anxiety disorders, obesity and rosacea with vision complications. Tr. 15, 89, 98, 102, 249. An administrative law judge ("ALJ") recognized as severe lumbar back disorder, as well as depression and anxiety disorders. Tr. 18. While he acknowledged the impairments of obesity and rosacea with vision complications, the ALJ found both to be non-severe. Id. Weighing the evidence of record, including administrative findings/opinions of three non-examining experts (two physicians, Drs. Mark Mahoney and Henry Laurelli, and one psychologist, Dr. Michelle Olson), the report of a consulting examiner (psychologist Dr. Romina Dragone-Hyde) and the references in the treating notes of the orthopedist, Dr. William Brennan, a nurse practitioner and a physician's assistant, the ALJ found

that Plaintiff retained the physical RFC[1] to perform light work with additional postural and environmental limitations, and the mental RFC to do simple, routine, repetitive work, with only simple decisions, only occasional changes in work setting, no assembly-line type work and limited social interaction.  Tr. 20.  Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was not disabled at any relevant time.  Tr. 26-27.

Plaintiff challenges the ALJ's decision for three reasons.  First, Plaintiff argues that the ALJ failed to analyze the supportability and consistency of the non-examining experts' prior administrative findings.  ECF No. 10 at 5-7.  Second, Plaintiff challenges the ALJ's Step-Two determination that rosacea with vision complications is non-severe.  Id. at 7-10.  Third, Plaintiff contends that the ALJ erred in failing to order a consulting examination to test Plaintiff's level of cognitive functioning (for example, her IQ).  Id. at 10-12.  In reliance on these arguments, Plaintiff has moved to reverse the decision of the Commissioner and to remand the case for further proceedings.  Id. at 13.  Defendant has filed a counter motion for an order affirming the Commissioner's decision.  ECF No. 12.  Both motions are before me on consent pursuant to 28 U.S.C. § 636(c).

## I.    <u>Standard of Review</u>

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g), 1383(c)(3); <u>see</u> <u>Purdy v. Berryhill</u>, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019).  Substantial evidence

---

[1] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 416.945(a)(1).

"means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted).  It is more than a scintilla and must do more than merely create a suspicion of the existence of a fact.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  Further, while "more than a scintilla of evidence is required to meet the benchmark, a preponderance of evidence is not." Clark v. Kijakazi, 673 F. Supp. 3d 119, 122 (D.N.H. 2023) (cleaned up).  The determination of substantiality is based on an evaluation of the record as a whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).  If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

## II.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3).  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  Id.; 20 C.F.R. §§ 416.905-06, 416.909-11.

### A.      The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  20 CFR § 416.920.  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 416.920(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 416.920(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 416.920(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 416.920(a)(4)(v).  The claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); see Ulitsch v. U.S. Soc. Sec. Admin., No. 24-cv-00074-PB, 2025 WL 691054, at *4 (D.N.H. Mar. 4, 2025) ("claimant bears the burden at the first four steps to prove by a preponderance of the evidence that they are disabled").

### B.      Opinion Evidence

Under 20 C.F.R. § 416.913(a)(2) a medical opinion is defined as "a statement from a medical source about what [the claimant] can still do despite . . . impairment(s) and whether [they] have one or more impairment-related limitations or restrictions." See Charlene C. v. Frank Bisignano, C.A. No. 1:24-cv-00354-MSM-AEM, 2025 WL 1543950, at *1 (D.R.I. May 30, 2025) (alterations in original). An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 416.920c. The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 416.920c(b)(2); Elizabeth V. v. O'Malley, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), adopted by text order (D.R.I. Apr. 19, 2024). Supportability refers to the quantum of relevant objective medical evidence and supporting explanations presented by a medical source to support the medical opinion or prior administrative medical findings; consistency refers to the degree to which a medical opinion or prior administrative medical finding is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. § 416.920c(c)(1)-(2). A medical opinion lacking adequate supporting evidence, or one that is inconsistent with evidence from other sources, is not persuasive regardless of who made the medical opinion. See Amanda B. v. Kijakazi, C.A. No. 21-308MSM, 2022 WL 3025752, at *2 (D.R.I. Aug. 1, 2022), adopted, 2022 WL 18910865 (D.R.I. Nov. 7, 2022). Further, a medical opinion must address the claimant's ability to function as limited by an impairment; thus, the ALJ may refuse to credit a medical opinion on an issue reserved for the Commissioner, such as one opining only that the claimant is "disabled." Roberts v. Apfel, 248 F.3d 1127, 2000 WL 1881911, at *1 (1st Cir. Dec. 28, 2000)

(unpublished table decision) (per curiam); Redley W. v. Kijakazi, C.A. No. 23-00072-WES, 2023 WL 6057447, at *7 (D.R.I. Sept. 18, 2023), adopted by text order (D.R.I. Oct. 3, 2023).

### III.    Background

#### A.    Plaintiff's History

Plaintiff had an abusive childhood but completed high school with placement in special education and attended college for one year.  Tr. 45-46, 439.  She has a driver's license but no car.  Tr. 19.  She has worked in food service and at daycare facilities, but not at a level sufficient to constitute past relevant work.  Tr. 18, 26, 236.  For many years, including during the period of alleged disability, she worked at home making crafts and selling them on-line from her "Etsy store," although this was not lucrative work (her best year yielded $700).  She testified that she had not sold anything for a couple of years.  Tr. 50-51.  Plaintiff lives alone, although near "friends," in a second-floor apartment (requiring her to walk upstairs), cares for her cat, shops in stores and gets help from a friend.  Tr. 44-45, 90, 439-41.

#### B.    Plaintiff's Physical Conditions

Plaintiff's encounters with her primary care physician assistant reflect treatment for weight concerns, skin issues (rosacea) and depression/anxiety.  Tr. 363-74, 585-607.  These records contain no mention of vision blurring or difficulty seeing.  They also reflect the provider's observation that "[c]ognition [is] normal."  E.g., Tr. 588.  Throughout the period in issue, Plaintiff treated with a dermatology provider for rosacea impacting her face, scalp and trunk.  Tr. 376-87, 448-64.  The dermatology records also make no mention of any vision issue. On February 14, 2024, Plaintiff had one encounter with an optometrist based on Plaintiff's complaint of her eyes not focusing for a few hours, which she reported had happened "a couple times."  Tr. 465.  Noting Plaintiff's history of rosacea, the optometrist found her vision

6

unimpaired but diagnosed "bleph[aritis],"[2] for which he suggested the use of eye wipes and eye drops with follow up in one year.  Id.  After this appointment, vision issues are not mentioned again except in passing to a mental health therapist a week after she saw the optometrist[3] and in connection with her SSI application.[4]

Plaintiff's primary complaint on SSI application was her lumbar spine difficulties; at the hearing, she testified that she cannot work because she cannot lift weights or climb up and down a stepstool.  Tr. 52-53, 89.  For most of the period in issue, Plaintiff's lumbar spine issue was treated at Ortho RI, primarily by Dr. William Brennan, whose diagnosis of disc herniation was accepted by the ALJ.  Tr. 324-25; see Tr. 22, 24-25.  Pursuant to his treating notes, Dr. Brennan opined that Plaintiff cannot lift more than twenty pounds, which limitation was adopted in the non-examining experts' RFC and accepted by the ALJ.  Tr. 20, 25, 92, 103, 571.  Otherwise, Dr. Brennan relied on an MRI and physical examination to find generally mild pain, with minimally antalgic or non-antalgic gait and some limits on motion; he prescribed occasional injections (which were successful, "good result with injection," Tr. 327), heating pad, home exercise including walking, occasional referrals for physical therapy,[5] and over-the-counter medication. Tr. 318-37, 348-49, 354-55, 570-73.  Apart from flare ups increasing Plaintiff's pain level to

---

[2] According to the National Institute for Health, blepharitis is an inflammatory condition affecting the eyelid. www.ncbi.nlm.nih.gov/sites/books/NBK459305/ (last visited on Apr. 30, 2026).

[3] These notes reflect: "[p]ast medical/ psych hx: no change, patient reports 'trouble with eyes recently' [and] reports she 'went to eye doctor and was prescribed eye drops.'"  Tr. 559.

[4] In subjective statements in support of her application, Plaintiff referenced vision concerns.  For example, Plaintiff told the consulting examination psychologist that she "has also been having problems with her vision."  Tr. 440.  In her first function report, Plaintiff made no claim of vision issues, Tr. 233, but in the second, she claimed issues with seeing and that "my eyesight is fuzzy and blepharitis irritates and clouds my eyes."  Tr. 255, 260.  During the ALJ hearing, Plaintiff testified that she has eye issue flares (which happens up to twice a week and lasts for two to three days) during which she cannot see to read, look at screens or watch television.  Tr. 67-71.  Plaintiff's attorney argued that she is "almost blind."  Tr. 38.

[5] According to the 2024 physical therapy notes, Plaintiff reported inter alia "feeling good" and that the "exercises have been helping her back pain."  Tr. 487, 493.

mild-to-moderate caused by spending time in a car and due to weather, Dr. Brennan observed "improvement," that Plaintiff was "overall still doing fairly well," and "stable." Tr. 326, 330, 333, 354, 493.

At one appointment on May 17, 2023, Dr. Brennan noted a slight increase in pain – from mild to moderate – due to performing chores at home; he prescribed an injection and a "[h]ome therapy walking program." Tr. 348-49. Without further explanation, this note includes: "[re]mains disabled." Tr. 349. By the next appointment, on June 22, 2023, Dr. Brennan found Plaintiff to be stable, with non-antalgic gait and intermittent pain. Tr. 354-55. Importantly, at virtually every appointment with Dr. Brennan, including one (on February 5, 2024) contemporaneous with Plaintiff's single encounter with the optometrist, Dr. Brennan's treating notes contain his survey of Plaintiff's medical complaints in a "Review of Systems," which consistently include the notation regarding Plaintiff's eyes: "[t]he patient denies any blurred vision, double vision or vision loss." E.g., Tr. 332, 354, 572.

### C.    ALJ's Consideration of Plaintiff's Physical Conditions

The ALJ considered the non-examining expert physicians' findings and RFC explanations, which reflect that they are supported by Dr. Brennan's treating notes. Tr. 91, 93, 100, 104. That is, apart from Dr. Brennan's conclusory statement ("[re]mains disabled"), which the ALJ properly rejected as both unsupported and an opinion on a matter reserved to the Commissioner, Tr. 25,[6] these experts' RFC findings are based on and are consistent with Dr. Brennan's findings on physical examination. Tr. 93, 104. Further, the ALJ's RFC mirrors these experts' RFC findings, except that it is somewhat more limiting in that, partially crediting

---

[6] This aspect of the ALJ's analysis is consistent with applicable law that such an unadorned opinion on a matter reserved for the Commissioner is "'inherently neither valuable nor persuasive.'" Redley W. v. Kijakazi, C.A. No. 23-00072-WES, 2023 WL 6057447, at *8 (D.R.I. Sept. 18, 2023) (quoting 20 C.F.R. § 416.920b(c)).

Plaintiff's testimony, Tr. 25-26, the ALJ added postural limits and environmental limits that these experts had not included.  Compare Tr. 20, with Tr. 93, 104.  Apart from Dr. Brennan's notation that Plaintiff "[re]mains disabled," the record contains no medical opinion from any source reflecting greater physical limitations than those found by the ALJ.

**D.    Plaintiff's Mental Health Conditions**

Although Plaintiff's application made no reference to work-impactful mental health symptoms, the existence of such impairments became evident by the reconsideration phase of the administrative proceedings, resulting in a consultative examination by Dr. Dragone-Hyde and a mental health psychiatric review technique ("PRT") and RFC analysis by Dr. Olson.  For mental health, Plaintiff had been seen at Angell Street Psychiatry in 2020 and 2021; she was diagnosed with anxiety and prescribed medication; these providers did not note any cognition concerns.  Tr. 313-17.  After a period when mental health treatment was provided by her primary care provider, in October 2023, Plaintiff attended a mental health partial hospitalization program at Butler Hospital with treatment for anxiety and depression.  Tr. 403-34.  These treating notes consistently reflect that "[i]ntellectual functioning: [a]ppears average."  E.g., 408, 415, 424.  In 2024, Plaintiff received mental health treatment from Revive Therapeutic where the most recent notes (from July 2024) reflect mental health observations within normal limits including average intellectual capacity (e.g., Tr. 529).  Tr. 523-65.  The primary care provider's treating note submitted after the ALJ's hearing reflects "[m]ajor depressive disorder in partial remission" as the reason for reduction of prescribed medication while treatment for anxiety with medication was continued.  Tr. 600.

**E.    ALJ's Consideration of Plaintiff's Mental Health Conditions**

9

The ALJ considered the findings of the non-examining mental health expert, Dr. Olson, who examined the record and performed a PRT review, with an explanation making clear that her analysis was supported by her examination of the treating record, including the record from Butler Hospital, which reflects that Plaintiff improved with treatment; the ALJ also considered the Dragone-Hyde consulting report; and the ALJ considered other evidence, such as that Plaintiff had completed some college.  Tr. 19- 20, 23-25, 105-06.  As reflected in her RFC findings, Dr. Olson disagreed with Dr. Dragone-Hyde's finding of limited ability to follow simple instructions.[7]  Tr. 105-06.  Accepting Dr. Olson's expert findings, the ALJ rejected this aspect of the Dragone-Hyde opinion.  Tr. 24.  Except for Dr. Dragone-Hyde's finding that Plaintiff's ability to follow simple instructions was "fair," Tr. 441, which Dr. Olson expressly considered and rejected based on her expert review of the "overall MER [Medical Evidence of Record]," Tr. 105, the record contains no opinion from any source reflecting greater mental limitations than those found by the ALJ.

## IV.    Analysis

### A.    ALJ's Approach to Non-Examining Experts' Findings

Plaintiff's first argument relies on the ALJ's failure to use the terms "supportability"[8] and "consistency"[9] in the portion of his decision finding "generally persuasive" the three non-

---

[7] Dr. Dragone-Hyde's report opines to the "appear[ance]" of borderline to low average intelligence, recommends IQ and achievement testing, and observes that the ability to follow simple instructions was only "fair."  Tr. 438-42.

[8] 20 C.F.R. § 416.920c(c)(1) defines the supportability analysis: "Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."

[9] 20 C.F.R. § 416.920c(c)(2) defines the consistency analysis: "Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."

examining experts' prior administrative findings.[10]  The operative regulation stipulates that these are the "most important factors" and that the ALJ is required to articulate how these factors were considered in assessing the persuasiveness of such findings.  20 C.F.R. § 416.920c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision").  Based on this deficiency, Plaintiff contends that the case must be remanded.  ECF No. 10 at 6; see Martinez v. Kijakazi, No. 3:20-cv-30151-KAR, 2021 WL 5054477, at *9-11 (D. Mass. Oct. 29, 2021) (remanding case because ALJ's rejection of treating source RFC opinion failed to include consistency analysis, leaving court unable to ascertain whether ALJ found material differences between opinion and other care providers' contemporaneous observations of her impairments and limitations).

The Commissioner defends the ALJ's approach arguing that, although the terms "supportability" and "consistency" were not used, the decision's detailed discussion of these experts' findings, focusing both on how they are supported and how they are consistent with the balance of the record, reveals that both factors were appropriately considered.  ECF No. 12 at 5-8.  This argument relies on cases holding that an ALJ need not use the words "consistency" and "supportability" to fulfill his obligation to consider these factors.  Id. (citing Marshall v. Bisignano, No. 1:24-cv-11431-JEK, 2025 WL 2207245, at *5 (D. Mass. Aug. 4, 2025)); see Darling v. Kijakazi, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023) ("An ALJ is not required to incant the 'magic words' of 'supportability' and 'consistency' in his findings."); Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024) (same).

---

[10] In contrast, the ALJ's decision specifically articulates supportability and consistency in his analysis of Dr. Dragone-Hyde's consultative examination opinions.  Tr. 25.

11

I agree.  As the Commissioner points out, the ALJ's analysis of the findings of the expert physicians, Drs. Mahoney and Laurelli, explicitly references that they were relying on the treating records showing a spinal disorder (including an MRI), but with pain rated as mild, negative straight leg raise bilaterally, which resulted in their RFC findings.  ECF No. 12 at 6 (citing Tr. 22-23).  Similarly, the ALJ's analysis of the findings of the expert psychologist Dr. Olson explicitly references her reliance on "claimant's records," and the "overall medical evidence," resulting in the finding that Plaintiff retained the ability to understand simple work instructions with other moderate mental limitations.  Tr. 24.  In short, it is clear that the ALJ appropriately performed the supportability/consistency analysis, despite his failure to use the terms.  Further, the ALJ's decision details his basis for affording little or no weight to the evidence that is inconsistent with the non-examining expert findings.[11]  Thus, the Court is not left to guesswork to determine whether the ALJ had a "sufficient rationale" for the decision. Martinez, 2021 WL 5054477, at *9 (internal quotation marks omitted).  While it would certainly have been preferable for the supportability/consistency terms to have been used, their omission is not error in the circumstances here.

**B.      ALJ's Step-Two Determination Regarding Rosacea with Vision Complications**

Plaintiff challenges the ALJ's Step Two determination that "rosacea with vision complications" was non-severe.  Tr. 18.  The ALJ appropriately supported this aspect of the

---

[11] That is, the ALJ's decision fully explains his rejection of the arguably inconsistent Brennan opinion that Plaintiff "[re]mains disabled."  Tr. 25.  Similarly, the ALJ appropriately amplified his reliance on Dr. Olson's finding that Plaintiff is able to follow simple instructions by setting out the evidence inconsistent with Dr. Dragone-Hyde's finding of possibly borderline cognition, including, for example, Plaintiff's education (high school with some college) and the longitudinal treating evidence from both Butler Hospital and the primary care provider that Plaintiff's observed cognitive capacity was "average" or "normal."  Tr. 19, 22-23.

decision with substantial evidence, including the conservative treatment[12] of this complaint based on a single visit to an optometrist, the optometrist's notation that the eye episodes lasted just a few hours and had happened just "a couple times before" and (most importantly) the optometrist's finding of no vision impairment, as well as the utter absence of any evidence from other treating sources that this impairment was even mentioned (except in passing to a therapist) or of any medical evidence that this impairment actually impacted any aspect of Plaintiff's ability to function. Tr. 18, 465. This evidence as marshaled by the ALJ directly rebuts not only Plaintiff's attorney's argument that Plaintiff is almost blind, but also Plaintiff's subjective statements that the episodes impacting vision extend over two to three days each, have been occurring for a decade and make her unable to read or see a screen. Tr. 18, 38, 41, 67-71; see Sacilowski, 959 F.3d at 441 (without evidence to directly rebut claimant's testimony nor other reason to question its credibility, statements should be taken as true).

The Court finds no error in the ALJ's Step-Two finding that rosacea with vision complications was non-severe during the period in issue.

### C.    ALJ's Failure to Order Cognitive Consultative Examination

Plaintiff contends that the ALJ erred in failing to order a consultative examination to test Plaintiff's level of cognitive functioning (for example, measuring her IQ and achievements). This argument rests on Dr. Dragone-Hyde's observation based on her one-time consultative examination that "estimate of intelligence appears to be within the borderline to low average range," with the recommendation of "IQ and achievement testing to determine her cognitive capabilities." Tr. 439, 442. During the ALJ hearing, Plaintiff asked the ALJ to consider cognitive testing, Tr. 80, to which the ALJ responded, "I'm not sure that's warranted here." Id.

---

[12] The recommended treatment is reflected on a single page – eye wipes, a prescription for eye drops and follow up in a year. Tr. 465.

The ALJ then confirmed with Plaintiff that she had been able to live alone with her cat for twenty years and ruled: "I think I'll go with what I have.  If there's a change, I will certainly let you know."  Id.  In the decision, the ALJ confirmed that he treated Plaintiff's inquiry as a request for a post-hearing cognitive consultative evaluation and declined to order such an examination in light of Dr. Dragone-Hyde's report having already been procured.  Tr. 15 n.1.

It is within the ALJ's discretion to decide whether to order a consultative examination if the claimant's medical sources cannot or will not provide sufficient medical evidence or to resolve an inconsistency in the evidence.  20 C.F.R. §§ 416.917, 416.919a(b).  The ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Renee P. v. Dudek, C.A. No. 24-00379-MSM, 2025 WL 1263713, at *4 (D.R.I. May 1, 2025), adopted, 2025 WL 2795503 (D.R.I. May 27, 2025).  Here, the record reflected not only Plaintiff's ability to live alone with her cat for many years, her educational attainments and her ability to earn up to $700 per year from operating her Etsy store, but also is replete with clinical observations that Plaintiff's cognitive functioning is average or normal.  Tr. 363 (coherent and rational thinking); Tr. 407-08, 415, 418, 421, 424, 432 (intact memory and average intellectual functioning); Tr. 427, 442 (intact memory); Tr. 432 (intact memory and average intellectual functioning); Tr. 588 (cognition normal).  With this evidence providing ample support for the ALJ's decision that cognitive testing was not necessary, the Court finds no abuse of discretion in the ALJ's decision to decline to order another consultative examination to procure it.

## V.    Conclusion

Having reviewed the entirety of this record mindful that it is the Court's "job . . . to . . . review the record and determine whether a reasonable mind . . . could accept it as adequate to

support [the ALJ's] conclusion," <u>Burton v. Kijakazi</u>, Civil Action No. 21-cv-11916-ADB, 2023 WL 2354901, at *8 (D. Mass. Mar. 3, 2023) (internal quotation marks omitted), the Court finds that remand is not appropriate and affirms the ALJ's well-supported and legally-correct decision. Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) is GRANTED.  The Court is directed to enter judgment in favor of Defendant.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 30, 2026

15